# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**DENISE GILKESON,**

    **Plaintiff,**

**v.**                                    **Case No: 2:12-cv-657-Ftm-38DNF**

**COMMISSIONER OF SOCIAL SECURITY,[1]**

    **Defendant.**

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on December 10, 2012. Plaintiff, Denise Gilkeson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability and Social Security Disability Insurance Benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A. Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On August 2, 2011, Plaintiff filed an application for Disability Insurance Benefits asserting a disability onset date of May 1, 2007. (Tr. p. 150-51). This claim was denied initially on August 30, 2011, and denied upon reconsideration on November 29, 2011. (Tr. p. 129-34, 136-41). A hearing was held before Administrative Law Larry J. Butler ("ALJ") on February 14, 2012. (Tr. p. 74-103). ALJ Butler issued an unfavorable decision on March 28, 2012. (Tr. p. 18-29). On October 19, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-6). The Plaintiff filed a Complaint in the United States District Court and on December 10, 2012. This case is now ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, ___ Fed. App'x. ____,

2013 WL 5788574 (11th Cir. Oct. 29, 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 Fed. App'x. 913, 915 n.2 (11th Cir. 2013).

The ALJ found Plaintiff met the Social Security Act's insured status requirements through June 30, 2009. (Tr. p. 20). At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2007. (Tr. p. 20). At step two, the ALJ found that the Plaintiff suffered from the severe impairments of "bipolar disorder, panic disorder, and polysubstance abuse (20 C.F.R. 404.1520(c))." (Tr. p. 20). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d). (Tr. p. 22).

The ALJ made two separate findings, one if Plaintiff continued her substance use, and one if she did not. The issues raised relate only to the ALJ's findings that consider Plaintiff's limitations without including her substance use. The Court will focus on the findings that do not include Plaintiff's substance use. Plaintiff stated the following: "For the sake of brevity and economy, the statements of the testimony and of the documentary evidence as set forth in the ALJ's decision (T. 8-25) are accepted by the Plaintiff and incorporated, as if fully presented herein, except as specifically alluded to, excepted, or expanded upon, below." (Doc. 15, p. 3).

Therefore, the Court will also accept the testimony and medical evidence as set forth in the ALJ's Opinion unless specifically set forth otherwise.

The following are the findings by the ALJ which do not include any substance use issues. The ALJ determined that Plaintiff's impairments would cause more than a minimal impact on Plaintiff's ability to perform basic work activity, and therefore, Plaintiff would continue to have a severe impairment or combination of impairments. (Tr. p. 24). The ALJ found that Plaintiff has mood and attention disorders and would require sustained treatment and a prescription drug regimen. (Tr. p. 24). The ALJ noted Plaintiff's activities include being able to drive, going to races, shopping, going to appointments, watching television, using a computer, attending church, attending a recovery group, and doing puzzles. (Tr. p. 24).

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medially equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (10 C.F.R. 404.1520(d). (Tr. p. 24). In terms of the "paragraph B" criteria, Plaintiff would have mild restriction in activities of daily living, in that she is able to take care of her personal needs independently, prepare simple meals, take care of pets, take care of her grandson, and engage in light cleaning or laundry. (Tr. p. 24). In social functioning, the ALJ determined that Plaintiff had only mild difficulties as shown by her attending church and group therapy sessions without difficulty and that she lives amicably with her husband, daughter, and grandson and is able to shop in public and use social media (Tr. p. 25). Regarding concentration, persistence or pace, the ALJ found Plaintiff to have moderate difficulties as shown by Plaintiff being able to watch television, read, use a computer and do puzzles, assist in pet care and care of her grandson, but Plaintiff does need frequent reminders to complete a task. (Tr. p. 25). The ALJ found Plaintiff did not experience any episodes of decompensation. (Tr. p.2 2). The ALJ concluded that

Plaintiff's impairments do not cause two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, and therefore, the "paragraph B" criteria are not satisfied. (Tr. p. 25). The ALJ determined that "paragraph C" criteria would not be satisfied. (Tr. p. 25).

The ALJ determined that if Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff "retains the ability to tolerate frequent social interaction but is unable to understand, remember, and carry out detailed or complex instructions. [Plaintiff] retains the ability to understand, remember, and carryout simple instructions." (Tr. p. 25).

The ALJ considered all of Plaintiff's symptoms that could reasonably be accepted to be consistent with the objective medical evidence and other evidence. (Tr. p. 26). The ALJ noted that Plaintiff's primary difficulty was depression, but she also stated that she has anxiety (Tr. p. 26). The ALJ noted that Plaintiff previously worked for UPS, but quit her job because of disagreements with her manager, and then she drove a school bus. (Tr. p. 26). She also worked for a friend doing landscaping part time. (Tr. p. 26). Plaintiff tried to work for the Census Bureau, but failed the entrance exam. (Tr. p. 26). The ALJ noted that Plaintiff generally gets along with people, and has no job skills with the exception of driving. (Tr. p. 26). The ALJ noted that Plaintiff's agroraphobia affects her only once every few months for a week or two, and during these periods she does not want to leave the house. (Tr. p. 26). The ALJ found that Plaintiff received medication from Dr. Mack every three months, and does not see the doctor more frequently due to lack of funds. (Tr. p. 26). Plaintiff stated that her medication helped, but she still feels down, she takes medication to sleep, and has tried many different medications. (Tr. p. 26). The ALJ noted that Plaintiff does not think she can work because she cannot pull herself

together, and cannot deal with nasty people. (Trp. 26).  The ALJ concluded that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, however, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that are inconsistent with the residual functional capacity assessment. (Tr. p. 27).

The ALJ found that based on his review of the medical records through Plaintiff's date last insured, the majority of Plaintiff's difficulties arose in connection with her substance abuse and non-compliance with medication therapy.  (Tr. p. 27).  In brief summary, the ALJ determined that Plaintiff's history of hospital admissions were connected with her substance use problem and her lack of continuity in taking her medications. (Tr. p. 27). The ALJ concluded that Plaintiff's hospitalizations and severe mental episodes were "largely precipitated by substance abuse rather than her mental condition alone."  (Tr. p. 27). The ALJ found that Plaintiff has no hospitalizations for her mental impairments that were not connected to her substance abuse.  (Tr. p. 27).  The ALJ determined that the record suggests that Plaintiff's mental condition can be adequately managed with treatment and medication as evidenced by her being able to work with these conditions from 2002 through 2005.  (Tr. p. 27).   The ALJ noted that Plaintiff ceased working for factors other than her mental impairments.  The ALJ pointed to further occurrences that showed that Plaintiff is not limited as evidenced by her activities such as preparing simple meals, taking care of herself, watching television, doing puzzles, taking care of pets, going to church, going to support meetings, driving, cleaning and watching her grandson.  (Tr. p. 27). The ALJ found that Plaintiff was able to function in a social setting as evidenced by Plaintiff interacting with multiple family members and attending substance abuse counseling.  (Tr. p. 28).  The ALJ concluded that even if Plaintiff stopped substance abuse she would be unable to

perform her past relevant work as a driver for United Parcel Service, a school bus driver, and a school bus attendant, and there is no issue of the transferability of job skills because her past relevant work was unskilled. (Tr. p. 28, 80-81).

At step 5, the ALJ determined that based on Plaintiff's age, education, work experience, and residual functional capacity, there are a significant number of jobs in the national economy that plaintiff could perform. (Tr. p 28). The ALJ determined that Plaintiff could perform work at all exertional levels, but would have nonexertional limitations as follows: Plaintiff "retains the ability to tolerate frequent social interaction but is unable to understand, remember, and carry out detailed or complex instructions. [Plaintiff] retains the ability to understand, remember, and carryout simple instructions." (Tr. p. 25). The ALJ found that these non-exertional limitations would have little or no effect on the occupational base of unskilled work at all exertional levels, and made a finding of not disabled. (Tr. p. 28). The ALJ found the framework of section 204.00 in the Medical-Vocational Guidelines to be appropriate. (Tr. p. 28). The ALJ concluded that Plaintiff's substance use disorder is a contributing factor material to the determination of disability, and that Plaintiff would not be disabled if she stopped the substance use, therefore, the ALJ found Plaintiff not disabled from the alleged onset date through the date of the decision. (Tr. p. 28).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises two issues on appeal. As stated by Plaintiff, they are: (1) the ALJ's decision was in error in utilizing the medical vocational guidelines to determine that the Plaintiff was not disabled and by finding that the non-exertional limitations had little or no effect on the occupational base of unskilled work; and (2) the administrative law judge's decision was in error by failing to explain the weight given to opinions by medical advisers to the state disability determination service per Social Security Ruling 96-6P.

### A. Use of Medical Vocational Guidelines with Non-Exertional Limitations

The Plaintiff asserts that the ALJ erred by using the Medical Vocational Guidelines to determine that Plaintiff was not disabled by finding that her non-exertional limitations had little or

no effect on the occupational base. The Commissioner asserts that the ALJ did not err in relying on the grids.

There are two avenues by which the ALJ may determine whether the Plaintiff has the ability to adjust to work in the national economy: either by using the Medical Vocational Guidelines ("grids") or by testimony from a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40. An ALJ cannot rely exclusively on grids when Plaintiff is unable to perform a full range of work at a given residual functional level or when a Plaintiff has non-exertional impairments that "significantly limit [her] basic work skills." *Id*. at 1242. "Significantly limit basic work skills" means that the limitations prohibit a plaintiff from performing a "wide range" of work at a given level. *Id*. at 1243.

If Plaintiff cannot perform a full range of work at a given level or has non-exertional impairments that prohibit a wide range of work at a given level, the ALJ may use the grids as a framework, but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that Plaintiff can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

In this case, the ALJ determined that without substance abuse, Plaintiff would have mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties regarding concentration, persistence or pace. (Tr. p. 25). The ALJ concluded that if the substance abuse ended, the Plaintiff had the residual functional capacity to perform a full range of work at all exertional level with the following nonexertional limitations: Plaintiff "retains the ability to tolerate frequent social interaction but is unable to understand, remember, and carry out detailed or complex instructions. [Plaintiff] retains the ability to understand, remember, and carryout simple instructions." (Tr. p. 25). The ALJ also determined that Plaintiff's non-exertional

limitation would have little or no effect on the occupational base of unskilled work at all exertional levels.

"Unskilled work" is defined in 20 C.F.R. § 404.1568(a) and § 416.968(a) as work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a) and § 416.968(a). The regulations provide that administrative notice is taken that a number of unskilled jobs exist in the national economy. 20 C.F.R. § 404.1566(d). A limitation "to simple tasks is already contained within the unskilled limitation, and is not a limitation above and beyond that classification." *Vuxta v. Commissioner of Social Security*, 194 Fed. App'x. 874, 878 (11th Cir. 2006).[2] Therefore, contained within the grids is the limitation to perform simple tasks in the unskilled work category. The ALJ's found that Plaintiff was limited to unskilled work with the additional limitation of being able to carryout simple instructions which is contained in the definition of unskilled work. Therefore, the decision of the ALJ is supported by substantial evidence. The ALJ did not err in relying on the grids to make the determination that Plaintiff is not disabled.

### B. Weight of Medical Opinions

Plaintiff asserts that the ALJ erred in failing to comply with Social Security Rule ("SSR") 96-6P by failing to mention and assess the weight of a medical adviser to the state Disability Determination Service, Elizabeth Michalec, Ph.D. The Commissioner responds that the ALJ's findings are consistent with Dr. Michalec's opinion and even though the ALJ did not mention Dr. Michalec, this failure was at most a harmless error.

---

2 Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

SSR 96-6P provides in part as follows:

**PURPOSE**: To clarify Social Security Administration policy regarding the consideration of findings of fact by State agency medical and psychological consultants and other program physicians and psychologists by adjudicators at the administrative law judge and Appeals Council levels. Also, to restore to the Rulings and clarify policy interpretations regarding administrative law judge and Appeals Council responsibility for obtaining opinions of physicians or psychologists designated by the Commissioner regarding equivalence to listings in the Listing of Impairments (appendix 1, subpart P of 20 CFR part 404) formerly in SSR 83-19. In particular, to emphasize the following longstanding policies and policy interpretations:

1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.

2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6P.[3] Generally courts have found that an ALJ errs in making an RFC determination when the ALJ's decision does not address all medical opinions and impairments. Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), the Commissioner "will always consider the medical opinion in [the] case record together with the rest of the relevant evidence [received]." In the instant case, the ALJ failed to consider Dr. Michalec's opinion. The Commissioner argues that Dr. Michalec's opinion is consistent with the ALJ's decision and therefore, the error was harmless. The rules and regulations require the ALJ to consider all the medical opinions and determine the weight to give to each of them. However, the Eleventh Circuit has found in unpublished cases that even though an ALJ does not explicitly state the weight he affords a medical opinion, if the opinion does not

---

3 "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted]. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference . . ." *Klawinski v. Comm'r of Soc. Sec.*, 391 Fed. App'x 772, 775 (11th Cir. 2010).

contradict the ALJ's findings, then this error is harmless. *Wright v. Barnhart,* 153 Fed. App'x. 678, 684 (11th Cir. 2005), See also, *Gorr v. Colvin*, 2013 WL 4855060, *6 (M.D. Fla. Sept. 11, 2013) (citing *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir.2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted); *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir.2006) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion); *Wright v. Barnhart,* 153 F. App'x 678, 684 (11th Cir.2005) (providing that the ALJ's failure to indicate the weight given to certain physicians was harmless error because those opinions did not directly contradict the ALJ's findings); see also *Parton v. Astrue*, No. 3:07–CV–63–J–TEM, 2008 WL 897094 (M.D. Fla. Mar.31, 2008) (finding ALJ's failure to address a treating physician's opinion was harmless error because fully crediting the opinion would not have changed the outcome)).

The ALJ concluded that if the substance abuse ended, the Plaintiff had the residual functional capacity to perform a full range of work at all exertional level with the following nonexertional limitations: Plaintiff "retains the ability to tolerate frequent social interaction but is unable to understand, remember, and carry out detailed or complex instructions. [Plaintiff] retains the ability to understand, remember, and carryout simple instructions." (Tr. p. 25). Dr. Michalec concluded that Plaintiff "retained the ability at least to persist at routine, uncomplicated tasks. She retained an understanding of and ability to demonstrate appropriate social behavior and interpersonal relating skills despite some fluctuations it appears in irritability and mood." (Tr. p. 121). Plaintiff argues that the ALJ's findings were similar to Dr. Michalec but not precisely the

same. The Court determines that the ALJ did not use the exact language of Dr. Michalec, however, the conclusions reached are consistent, and Plaintiff failed to indicate any contradictions between the two conclusions. Plaintiff argues that if the ALJ had used Dr. Michalec's exact findings, a vocational expert would have been needed to determine that there were a significant number of jobs in the national economy which Plaintiff could perform. The Court determines both the ALJ and Dr. Michalec concluded that Plaintiff was able to perform simple tasks and has the ability to demonstrate appropriate social behavior. The ability to complete simple tasks falls within the definition of unskilled jobs. Therefore, the Court finds that if the ALJ erred in not considering Dr. Michalec's opinion, the error was harmless.

**IT IS RESPECTFULLY RECOMMEDED:**

Upon consideration of the submissions of the parties and the administrative require, the Court finds that the decision of the Commissioner was supported by substantial evidence and was decided according to proper legal standards. Therefore, the Court recommends that the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida on February 10, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties